UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:12CV1717 SNLJ |
| | ) |
| HALL'S RESTAURANT, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Depositors Insurance Company filed this declaratory judgment action seeking a determination of whether defendant is entitled to insurance coverage under a fire loss policy issued by plaintiff. This matter is before the Court on Defendant's Daubert Motion to Exclude Certain Opinion Testimony of Michael Presson (ECF #25). The motion has been briefed and is ready for disposition. For the reasons set forth below, defendant's motion will be denied.

**I.     Background**

On March 19, 2012, a fire occurred at Hall's Restaurant in Ellington, Missouri. Following the fire, defendant presented a claim to plaintiff under a commercial property insurance policy seeking to recover insurance benefits for the fire damage. After an investigation of the claim, plaintiff denied coverage on the grounds that the fire was intentionally set by, or at the direction of, a representative of defendant. Plaintiff filed the instant action seeking a judicial determination of the rights and obligations of the parties to the insurance contract.

In making its claim decision, plaintiff relied in part on a report prepared by Michael Presson, a certified fire investigator employed by Pyr-Tech, Inc. Plaintiff retained Presson to conduct an origin and cause investigation of the Hall's Restaurant fire. Presson conducted a detailed investigation and concluded that the cause of the fire was the deliberate application of an ignitable liquid, which was ignited by an open flame. Presson sent a report to plaintiff outlining his investigative work, his opinions and conclusions, and the bases for same.

In conducting his investigation of the Hall's Restaurant fire, Presson conducted a detailed examination of the fire scene. He documented the fire scene through photographs and a diagram. He removed debris in order to view burn and char patterns. He examined the burn and char patterns. He examined smoke damage and fire damage. He also conducted an interview with the business owner and with an eyewitness who observed the fire in its early stages. Based on these activities, he identified the area of fire origin to be at floor level in the center of the main dining room.

After identifying the area of fire origin, Presson conducted a detailed examination to determine if there was a competent ignition source within the area of fire origin. His examination did not reveal any competent ignition sources within the area of fire origin. Presson observed an irregularly shaped fire pattern within the area of fire origin (on the main dining room floor) which he believed was consistent with the pouring of an ignitable liquid. Presson collected four debris samples from the area of fire origin and sent them to a forensic chemist for analysis. The forensic chemist reported that all four

samples tested positive for the presence of an ignitable liquid, specifically, a light petroleum distillate.

Plaintiff has formally endorsed Presson as an expert witness in this case to offer opinion testimony regarding the origin and cause of the fire. Plaintiff has provided Presson's expert report to defendant. Defendant now moves to exclude certain opinion testimony by Presson. Defendant does not challenge Presson's qualifications. Instead, the basis for defendant's motion is Presson's failure to follow certain guidelines and procedures set forth in the National Fire Protection Association (NFPA) 921 Guide for Fire and Explosion Investigations, 2011 Edition. Specifically, defendant contends that Presson failed to follow NFPA 921 procedures with respect to collection of a comparison debris sample from the fire scene. Defendant also contends that Presson failed to follow NFPA 921 guidelines with respect to determination of the ignition source for the fire by using a negative corpus methodology.

## II. Legal Standard

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This Court must act as a "gatekeeper" to "ensure than an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

In *Daubert*, the Supreme Court focused on the admissibility of scientific expert testimony and discussed certain specific factors that would be helpful in determining the reliability of a particular scientific theory or technique. The *Daubert* factors that a court may consider when making the reliability determination include: "1) whether the theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer review or publication; 3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and 4) whether the theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert,* 509 U.S. at 592–94). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Id.* (quoting *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.*

"[T]he proponent of expert evidence must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology

underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 591-93). Courts have broad discretion regarding the admissibility of expert testimony, and "[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Robinson v. Geico General Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir. 2006); *McIntosh v. Monsanto Co.,* 462 F.Supp.2d. 1025, 1032 (E.D. Mo. 2006). Rule 702 clearly "is one of admissibility rather than exclusion." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991). Generally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Robinson,* 447 F.3d at 1100 (quoting *Daubert,* 509 U.S. at 595).

## III. Discussion

Defendant alleges that Presson's report is not a product of reliable principles and methods because he failed to follow NFPA 921. Specifically, defendant alleges that Presson violated the principles of NFPA 921 in two regards: (1) by failing to obtain control samples from the debris of Hall's Restaurant; and (2) by using a negative corpus methodology for his conclusion as to the ignition source of the fire. By failing to obtain control samples in compliance with NFPA 921, defendant argues that it is impossible to determine whether the samples Presson collected were truly contaminated with an accelerant or if the entire floor had light or other petroleum distillates contained therein. Further, defendant argues that the negative corpus methodology is specially prohibited by

NFPA 921 and that Presson's assumption that the fire was ignited with an open flame is not supported by any actual evidence of how the fire ignited. For these reasons, defendant argues that Presson's methodology is flawed and in violation of NFPA 921 and, as a result, he should not be allowed to testify to his opinions regarding the origin and cause of the fire.

Plaintiff argues that Presson's expert opinions are admissible because his investigation was in conformance with generally accepted fire science methodology and investigation practice and his methodology and bases for his opinions are sufficiently reliable. Presson does not purport to have followed and applied the sections of NFPA 921 raised in defendant's motion and, according to plaintiff, he is not required to follow NFPA 921. Plaintiff offered affidavit testimony from Presson that he did not follow the NFPA 921 recommended procedure regarding the collection of comparison samples because, in his opinion, the procedures were not applicable to the fire scene and were not necessary. Additionally, he did not follow the NFPA 921 recommended guideline regarding inappropriate use of the process of elimination (negative corpus methodology) because he does not agree with the recommendation. Plaintiff points out that the Eighth Circuit has held that NFPA 921 is not the only reliable method to investigate a fire and failure to follow NFPA 921 is not necessarily determinative as to reliability of an expert's methodology.

Plaintiff is correct that in the Eighth Circuit reliance on a methodology other than NFPA 921 does not render an expert's opinion per se unreliable. See *Russell*, 702 F.3d at 455-56. The Eighth Circuit has held that NFPA 921 "qualifies as a reliable method

6

endorsed by a professional organization," but it has "not held NFPA 921 is the *only* reliable way to investigate a fire." *Id.* at 455 (internal quotations and citations omitted) (emphasis in original). Further, the Eighth Circuit's "NFPA 921 cases stand for the simple proposition [that] an expert who purports to follow NFPA 921 must apply its contents reliably." *Id.* (citing *Presley v. Lakewood Eng'g*, 553 F.3d 638, 645 (8th Cir. 2009) (affirming the exclusion of expert testimony because the expert "failed to follow . . . the standards he purported to follow"); *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060 (8th Cir. 2005) (affirming the exclusion of expert testimony because the expert, who purported to follow NFPA 921, "did not apply the principles and methods of NFPA 921 reliably to the facts of the case")). Because Presson does not purport to have followed and applied the provisions of NFPA 921 raised by defendant, his failure to follow and apply said provisions cannot serve as a basis to exclude his opinion testimony. *Id.* at 455-56. The issue, then, is whether Presson's methodology and bases for his opinions are otherwise sufficiently reliable.

In the context of fire investigations, expert opinions formed on the basis of observations and experience may meet the reliability threshold. The Eighth Circuit has held that experts used reliable methods when they "observed the relevant evidence, applied their specialized knowledge, and systematically included or excluded possible theories of causation." *Shuck v. CNH America*, 498 F.3d 868, 875 (8th Cir. 2007). Additionally, the Eighth Circuit has permitted opinion testimony on the origin and cause of a fire where the fire expert's methodology was based on observation and experience.

See *Russell*, 702 F.3d at 456-58; *Hickerson* v. *Pride Mobility Products Corp.,* 470 F.3d 1252, 1257 (8th Cir. 2006).

In *Russell v. Whirlpool Corp.*, the Court upheld the admission of expert opinion testimony on origin and cause of a fire based on the expert's testimony that his methodology included interviewing witnesses, eliminating alternative causes, observing and documenting the scene, examining burn patterns, applying his specialized knowledge, identifying the area of origin, and reaching a conclusion. *Russell*, 702 F.3d at 457. The Court found that the expert's methods were sufficiently similar to methods it had found reliable in *Hickerson v. Pride Mobility Products Corp.* In *Hickerson,* the Court held that a fire expert's method was sufficiently reliable and upheld the admission of the expert's opinion testimony on the origin and cause of a fire where the expert examined burn patterns, examined heat, fire, and smoke damage, identified an area of origin, and considered as possible causes all potential ignition sources within the area of origin. *Hickerson*, 470 F.3d at 1257.

Additionally, this Court has permitted opinion testimony on the origin and cause of a fire where the fire expert utilized a sound and reliable methodology based on observation and experience. See *Harrington* v. *Sunbeam Products, Inc.,* 4:07CV1957 CAS, 2009 WL 701994, at *10-12 (E.D. Mo. March 13, 2009). In *Harrington v. Sunbeam Products, Inc.*, this Court held that a fire expert's methodology was sufficiently reliable and permitted the expert to offer opinion testimony where the expert based his opinions on his examination of the fire scene and his interview of an eyewitness. *Id.* Specifically, the expert "systematically approached the scene and utilized the scientific

8

method to reach his opinions, by collecting data, inspecting the scene, taking photographs, interviewing the only living eyewitnesses, and examining the objects in the area where the fire occurred . . . ." *Id.* at *11. The Court found that "[t]here is no 'bright-line rule for testing in fire cases' and under 'certain circumstances, a fire expert can offer a reliable opinion based upon specific observation and expertise.'" *Id.* at *12 (quoting *Presley*, 553 F.3d at 644).

In this case, Presson concluded that the cause of the fire was the deliberate application of an ignitable liquid, which was then ignited by an open flame device based upon: 1) his examination and interpretation of the burn and char patterns; 2) his examination and interpretation of the smoke and fire damage; 3) the lack of a competent ignition source within the area of fire origin; and 4) the results of the chemical analysis on the debris samples. The methodologies utilized by Presson are substantially similar to the methodologies utilized by the experts in the *Russell*, *Hickerson,* and *Harrington* cases. In each of those cases, the Court held that the expert's methodology and the bases for the expert's opinions were sufficiently reliable. In each of those cases, the Court ruled that the expert could properly offer opinion testimony as to the origin and cause of the fire. Similarly, this Court finds that Presson's opinions are based on sound and reliable methodology and he is qualified to offer opinion testimony as to the fire's origin and cause.

## IV. Conclusion

In sum, this Court finds that the expert testimony at issue satisfies the standards of *Daubert* and Rule 702. As a result, the Court will not exclude Presson's testimony regarding the origin and cause of the fire at Hall's Restaurant on March 19, 2012.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Daubert Motion to Exclude Certain Opinion Testimony of Michael Presson (ECF #25) is **DENIED**.

Dated this 26th day of March, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE